CLERK OF COURT
OCT 16 2026
U.S. BANKRUPTCY COURT
DISTRICT OF COLORADO

B1040 (FORM 1040) (12/24)

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|
| **PLAINTIFFS**<br>Tiffany Taneesha Grays | **DEFENDANTS**<br>Laradon NW LLC d/b/a/ GORMAN & COMPANY LLC; d/b/a/ GEC LARADON NW LLC,<br>TSCHETTER, SULZER, MUCCIO P.C. |
| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>Tiffany Grays<br>PO Box 472322<br>Aurora, CO 80047<br>720-571-5811 \| Legalgrays@gmail.com | **ATTORNEYS** (If Known)<br>Emma B. Lor, #46063<br>5299 DTC Blvd #900<br>Greenwood Village, CO 80111<br>303-699-3484 \| emma@tsm.law |
| **PARTY** (Check One Box Only)<br>☒ Debtor ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor ☐ Other<br>☐ Trustee | **PARTY** (Check One Box Only)<br>☐ Debtor ☐ U.S. Trustee/Bankruptcy Admin<br>☒ Creditor ☐ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

"Action for damages for willful violation of the automatic stay under 11 U.S.C. § 362(k) and for civil contempt/sanctions for willful violation of the discharge injunction under 11 U.S.C. § 524(a) arising out of unlawful eviction actions."

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(a) – Recovery of Money/Property**
- ☐ 11-Recovery of money/property - §542 turnover of property
- ☐ 12-Recovery of money/property - §547 preference
- ☐ 13-Recovery of money/property - §548 fraudulent transfer
- ☐ 14-Recovery of money/property - other

**FRBP 7001(b) – Validity, Priority or Extent of Lien**
- 5 ☒ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(c) – Approval of Sale of Property**
- ☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(d) – Objection/Revocation of Discharge**
- ☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(e) – Revocation of Confirmation**
- ☐ 51-Revocation of confirmation

**FRBP 7001(f) – Dischargeability**
- ☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
- ☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
- ☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(f) – Dischargeability (continued)**
- ☐ 61-Dischargeability - §523(a)(5), domestic support
- ☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
- ☐ 63-Dischargeability - §523(a)(8), student loan
- ☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
- 4 ☒ 65-Dischargeability - other

**FRBP 7001(g) – Injunctive Relief**
- 1 ☒ 71-Injunctive relief – imposition of stay
- 2 ☒ 72-Injunctive relief – other

**FRBP 7001(h) Subordination of Claim or Interest**
- ☐ 81-Subordination of claim or interest

**FRBP 7001(i) Declaratory Judgment**
- 3 ☒ 91-Declaratory judgment

**FRBP 7001(j) Determination of Removed Action**
- ☐ 01-Determination of removed claim or cause

**Other**
- ☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
- ☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| | |
|---|---|
| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
| ☑ Check if a jury trial is demanded in complaint | Demand $7,476,073.94 |

Other Relief Sought

B1040 (FORM 1040) (12/24)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Tiffany Taneesha Grays | BANKRUPTCY CASE NO.<br>25-14416-JGR | |
| DISTRICT IN WHICH CASE IS PENDING<br>COLORADO | DIVISION OFFICE | NAME OF JUDGE<br>Joseph G. Rosania, Jr. |
| **RELATED ADVERSARY PROCEEDING (IF ANY)** | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br>Tiffany Grays | | |
| DATE<br>10/12/2026 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Tiffany Taneesha Grays | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

# UNITED STATES BANKRUPTCY COURT
for the
District of Colorado

Bankruptcy Case No. **25-14416-JGR**
Chapter 7

In re:
TIFFANY TANEESHA GRAYS
*Debtor.*

TIFFANY TANEESHA GRAYS
Plaintiff,

v.

LARADON NW LLC,
d/b/a/ GORMAN & COMPANY LLC;
d/b/a/ GEC LARADON NW LLC,
Defendant(s).

TSCHETTER, SULZER, MUCCIO P.C.
Defendant(s).

Adversary Proceeding No.__________

## EMERGENCY COMPLAINT TO ENFORCE THE STAY, TO ENFORCE THE DISCHARGE, FOR CONTEMPT, SANCTIONS, DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF

Ms. Grays, Tiffany Grays, ("Ms. Grays" or "her"), *pro se*, hereby respectfully moves the Court for an Emergency Order holding Creditor, Laradon NW LLC (the "Creditor"), and all their agents and employees in civil contempt and issuing sanctions for willful violations of the automatic stay pursuant to 11 U.S.C. § 362(k), and for willful violations of the discharge injunction pursuant to 11 U.S.C. § 524 and 11 U.S.C. § 105(a), and Federal Rule of Bankruptcy Procedure 9020. In support thereof, Ms. Grays respectfully states as follows:

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 11 U.S.C. § 524(g)(2)(A), 28 U.S.C. §§ 1334 and 157. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (G), and (O). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. Ms. Grays submits to this Court's final orders and judgments. The Adversary Proceeding constitutes a core proceeding pursuant to 28 U.S.C. §

157(b)(2). To the extent that any matter herein is non-core, the Creditor Trustee hereby consents to the Court's entry of a final judgment resolving this Adversary Proceeding.

## II. EMERGENCY RELIEF WARRANTED

2. While there is no established criteria or test in the Tenth Circuit to determine if relief requested is emergent in nature, looking to the U.S. Supreme Court can provide some guidance. The legal standard that the Supreme Court uses for granting emergency injunctions is similar to the standard that it uses for granting emergency stays. Both standards consider the merits of the case, the possibility of irreparable harm absent relief, and (at least in close cases) the public interest and the equities. *Compare Roman Cath. Diocese*, 141 S. Ct. at 66 (injunctions), *with* Ind. State Police Pension Tr. v. Chrysler LLC, 556 U.S. 960, 960 (2009) (per curiam) (stays).
3. Emergency relief is appropriate in this case as it is (i) "necessary or appropriate in aid of [its] jurisdiction[]" and (ii) "agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). When this Court's jurisdiction "might otherwise be defeated by the unauthorized action of the court below[,]" *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 25 (1943) (explaining that a writ was "in aid of" a court's jurisdiction even before jurisdiction was "acquired by appeal" because "[o]therwise the appellate jurisdiction could be defeated and the purpose of the statute authorizing the writ thwarted by unauthorized action of the district court obstructing the appeal"), emergency relief is appropriate.
4. Human beings have basic needs, one of which is shelter. Currently, Ms. Grays is homeless as a result of the eviction which is in violation of this Court's discharge injunction. This Court has vast equitable powers to right a blatant violation of federal law and jurisdiction to defend against all who disregard it's orders. Any delay in the filing of this instant Motion was not by choice or intentional, but are instead a direct effect of the debilitating symptom of the eviction itself.
5. Since the judgment of possession, Ms. Grays has had to act in day-to-day survival—finding temporary shelter, avoiding sleeping in her car, moving her belongings, seeking relief from the district court and the Colorado Court of Appeals, seeking relief from mental and physical anguish, rightfully consumed 100% of her time. The eviction caused severe financial and logistical disruption in record maintenance and limited access to internet.
6. This matter is emergent also in that Ms. Grays now has an eviction judgment on her record making it nearly impossible to secure safe, permanent housing and if a landlord is willing, Ms. Grays will have to come up with additional security deposit, which she does not have. The eviction has caused Ms. Grays to lose her rent assistance making stable shelter further unreachable. Ms. Grays currently trapped in homelessness because the illegal judgment is actively destroying your ability to pass a tenant screening.

7. As soon as Ms. Grays was able to secure the resources to file this Motion, she did so. Every day the illegal judgment stands, Ms. Grays' ability to secure a stable life is actively crippled, making standard court scheduling entirely inadequate.

## III. PARTIES

8. Plaintiff, Ms. Tiffany Grays is an individual resident of the state of Colorado, the Debtor in the Chapter 7 bankruptcy, has claims that arise out of conducting business and residing in Denver, Colorado, and filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code; of which is the subject of this Complaint.
9. Defendant Laradon NW LLC ("Creditor" and/or "Laradon") d/b/a GEC Laradon NW LLC d/b/a Gorman & Company, LLC is a Wisconsin corporation with a principal address of 200 N Main St. Oregon, WI 53575, is doing business in Denver, Colorado and was a Creditor in Ms. Grays Chapter 7 Bankruptcy.
10. Defendant, Tschetter Sulzer Muccio, P.C., ("Tschetter") located at 3600 S. Yosemite St., Ste. 828, Denver, CO, 80327, is a law firm which performs hundreds if not thousands of evictions across the state of Colorado, is the law firm which represents the Creditor in many eviction cases, including the eviction case that is the subject matter of this adversary proceeding, is the law firm representing Creditor Laradon in this matter and at all times relevant, was acting as a Debt Collector

## IV. FACTS

8. All Exhibits referenced herein were attached to ECF No. 20 and are thereby reference attached hereto.

9. On July 16, 2025, Ms. Grays filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. Ms. Grays was granted the ability to proceed without payment of fees.

10. The filing of the petition triggered the automatic stay pursuant to 11 U.S.C. § 362(a), enjoining all entities from commencing or continuing any action or proceeding against the Ms. Grays to recover a pre-petition claim.

11. Laradon NW LLC ("Creditor"), was Ms. Grays' landlord beginning in September 2022. Since the beginning of Ms. Grays tenancy, Creditor has failed to properly maintain the premises, financial records and management. Creditor's agent admitted the ledgers needed to be "fix[ed,]" (Exhibit 2 at p.1), in August 2023. Ms. Grays' ledger was never fixed.

12. Ms. Grays is disabled, low income, prone to harm and was a Housing Choice Voucher ("HCV") f.k.a. Section 8, a subsidized housing program under U.S. Housing and Urban Development.

13. Ms. Grays' HCV paid almost all of her rent to Creditor. At the time of Ms. Grays filing her bankruptcy, Ms. Grays was only paying $50.00 per month and the HCV was paying the rest of the rent due. As an HCV participant, Ms. Grays is entitled

to additional protections which were usurped through Creditor's noncompliance as outlined herein.

14. Since 2023, Creditor has filed multiple Forcible Entry and Detainer ("FED") cases against Ms. Grays in Denver County Court cases 23C64862, 25C1012, and 25C59067.

15. All the aforementioned cases were dismissed after Ms. Grays' Motions to Dismiss.

16. Ms. Grays' Motions to Dismiss were based on multiple reasons, including but not limited to the fact that Creditor had failed to properly maintain a financial accounting of what Ms. Grays owed.

17. Ms. Grays sought to cure many times (Exhibit 6 at p.5 ln 15-21) Ms. Grays has contacted Creditor, the attorney for Creditor in the FED cases, property management and Creditor's management team seeking correction, many times, all to no avail.

18. Ms. Grays schedules included past-due rent, late fees, attorney fees, court costs, and utility fees herein entitled 'debt' owed to the Creditor in the amount of $3,500 on Schedule F Part 2 at 4.1. Notice of the bankruptcy filing was served on the Creditor on July 19, 2025 to the mailing address for Creditor registered with the Colorado Secretary of State business database.

19. Neither Notice of petition or the discharge mailed to Creditor by the Court were returned to the Court.

20. While Creditor received Notice of the bankruptcy in July 2025, Creditor still sought payment of past debt through the many humiliating postings of many Demand for Rent or Possessions ("Demand(s)") posted on Ms. Grays' front door for all to see. (Exhibit 1 pp. 1-17).

21. On, October 30, 2026, this Court entered an Order granting Ms. Grays a discharge under 11 U.S.C. § 727 (the "Discharge Order"). Notice of the discharge was served on the Creditor on November 1, 2025.

22. The debt sought in 26CV129, is clearly pre-petition debt, as the amount alleged owed amounts to more than the $50.00 per month (Exhibit 1 at p. 7), Ms. Grays owed, as the remainder of the monthly rent had been covered by the HCV. Ms. Grays never paid her portion of the rent, due to the inaccurate amount Creditor said Ms. Grays owed. (Exhibit 6 at p.5 ln 15-21).

23. The many errs and/or mathematical impossibilities within the Demands validate Creditor's willful mismanagement of financial records and substantiates amounts stated to be owed in Demands served after Creditor was noticed of Ms. Grays' bankruptcy were indeed pre-petition and therefore also discharged debt:

    a) Exhibit 1 p.1 –

        A. shows the monthly rent is $1828;

B. past rent due from September 2022 [emphasis added] – the month Ms. Grays moved in – to November 2024 is $2,225.00;

C. past due late fees – which tenants in Denver cannot be evicted over and should not be included in a Demand Notice as the Demand Notice should state only the actual amount to cure- from February 2024 to November 2024 are $560.00;

D. past due utility fees - which tenants in Denver cannot be evicted over and should not be included in a Demand Notice – from November 2024 are $20.80;

E. a total of $2,795.80 to cure and avoid eviction.

b) Exhibit 1 p.3, the next Demand humiliating and causing Ms. Grays further severe emotional distress was posted on her door on or about March 11, 2025, which includes rent, late fees, utility fees, and deposit, states in the four months since the previously posted Demand in November 2024, the amount owed has decreased without any payment made by Ms. Grays (Exhibit 2) from $2,795.80 in November 2024 to $2,325.14; a difference of -$470.66.

c) Exhibit 1 p.5, the next Demand humiliating and causing Ms. Grays further severe emotional distress was posted on her door on or about May 27, 2025, which includes rent, late fees, utility fees, and deposit, states in the two [emphasis added] months since the previously posted Demand in March 2025, the amount owed has increased without any payment made by Ms. Grays from $2,325.14 in March 2025 to $2,936.74; a difference of $611.60.

d) Exhibit 1 p.7, the next Demand humiliating and causing Ms. Grays further severe emotional distress was posted on her door on or about September 10, 2025, which is only for rent due, states in the four months since the previously posted Demand in May 2025, the amount of rent owed had increased appropriately at $50.00 per month without any payment made by Ms. Grays from $1,662.00 in May 2025 to $1,862.00 in September 2025; a difference of $200.00.

e) Exhibit 1 p.9, which was attached to p.7, shows the law firm representing Creditor has inaccurately stated Ms. Grays owes "[$]1,712.00" *Id.*, for "rent and/or other charges under the lease," *Id.*, for "June," *Id.*, and "[$]50.00." for "July [,] August [, and] September[.]" *Id.*

A. FED laws require Demands to comply with strict laws as housing is a basic need and FED law should only be exercised under strict compliance. This Demand from the attorney on behalf of Creditor is willfully and wantonly defective:

A. there is no year attached to the months;

B. Ms. Grays' rent in June was not $1712.00; and

C. Is requiring payment of "other charges" to cure.

f) Exhibit 1 p.12, the next Demand humiliating and causing Ms. Grays further severe emotional distress was posted on her door on or about October 30, 2025, which is for rent due, "1,912.00" Exhibit 1 p.12, late fees "$900.00" *Id.*, and utility fees "$66.34," *Id.*, states in the one month since the previously posted Demand in September 2025, the amount of rent owed had increased appropriately at $50.00 without any payment made by Ms. Grays from $1,862.00 in September 2025 to $1,912.00 in October 2025.

g) Exhibit 1 p.15, the next Demand humiliating and causing Ms. Grays further severe emotional distress was posted on her door on or about November 11, 2025, which is for rent due, late fees and utility fees, states in the less [emphasis added] than one month since the previously posted Demand in October 30, 2025, the amount of rent owed had decreased mysteriously to "$200.00" Exhibit 1 p.15, late fees decreased to "$200.00" *Id.*, and utilities "$104.44" *Id.*, without any payment made by Ms. Grays.

A. These amounts are grossly different from what was alleged to be owed about two weeks prior with differences of: $700.00 for late fees, $1,712.00 for rent, and $18.10 for utilities.

B. These amounts were reduced based on the discharge according to the manager at the time, Tac Bonney. While the Demand was reduced, Ms. Grays' ledger still reflected incorrect amounts owed. (Exhibit 2 at pp.20-25). Given the significant turn-over in management, Ms. Grays knew she needed the ledger to be accurate so she does not lose her HCV. This turned out to be true given the next Demand notice below.

h) Exhibit 1 p.18, the next Demand humiliating and causing Ms. Grays further severe emotional distress was posted on her door on or about January 09, 2026, which is for rent due in the less than two [emphasis added] months since the previously posted Demand in November 11, 2025, the amount of rent owed had significantly increased to "$2,062.00" Exhibit 1 p.18, without any payment made by Ms. Grays; an increase of $1,862.00 in two weeks.

24. After the November 2024 Demand, Creditor filed FED case 25C1012, which was dismissed.

25. After the March 11, 2025 Demand, and before the May 27, 2025 Demand Creditor filed FED case 25C59067, which was dismissed.

26. After the January 2026 Demand, in retaliation for Ms. Grays engaging in protected activity of getting the erroneous FED actions dismissed, Creditor filed FED case 26C53872 on or about February 11, 2026, alleging Ms. Grays owed $2,062.00 in rent. (Exhibit 3 at p.1). 26C53872 was closed and consolidated with Ms. Grays' ongoing case seeking cross and counterclaims in Denver district court case 26CV129. 26CV129 was enacted through Ms. Grays' won appeal in 25C59067.

27. Ms. Grays was evicted for nonpayment of rent on April 14, 2026. (Exhibit 3 at ¶.1. *See also* Exhibit 3 at p.2). The intent and effect of the eviction was to coerce and harass Ms. Grays into payment of discharged debt through continuing to adjudicate a claim whose enforcement is prohibited by the federal discharge injunction imposed by this Court.

28. Paragraph 23 and its subparagraphs outlines the willful and wanton conduct of Creditor not only in the number of Demands, the grave mathematical impossibilities of money Ms. Grays allegedly owed, noncompliance with safeguards for HCV recipients, noncompliance with FED law limiting evictions to only nonpayment of rent – explicitly excluding late fees, utilities, and deposits - and the attorney's failure to conduct due diligence into their clients' allegations; all have been to Ms. Grays' detriment causing severe emotional distress.

29. Ms. Grays could not move with her HCV while Creditor maintained a balance owed.

30. Paragraph 23 and its subparagraphs proves money said to be due in all of the Demands were amounts owed from September 2022 through January 2026.

31. Paragraph 23d – 23f prove Creditor while the automatic stay was in full force and effect, willfully violated the stay by posting multiple Demands seeking possession and the collection of the pre-petition rent, utilities, late fees and deposit.

32. Paragraph 23g – 23h prove that while the pre-petition debt had been discharged, Creditor willfully violated the discharge by posting multiple Demands and filing a FED for an eviction that included discharged debt, causing Ms. Grays to be evicted, becoming homeless, suffering severe emotional distress.

33. The discharge extinguished the Ms. Grays's personal liability for the pre-petition debt pursuant to 11 U.S.C. § 524(a)(1).

34. Rather than dismissing the unlawfully filed FED action in 26C53872/26cv129, the Creditor doubled-down and continued to prosecute the eviction after the discharge was entered. During the FED proceeding, Ms. Grays entered the discharge on the record which lists Creditor. (Exhibit 6 at p.2 ln 8-25, p.3 ln 1-15, p.4 ln 16-25, p.5 ln 1-14). Creditor maliciously and willfully continued seeking eviction predicated upon monies alleged to be owed, while having direct knowledge based on evidence on the record that most of the amounts alleged owed were discharged.

35. The Demands included discharged amounts Ms. Grays did not owe. Exhibit 2 shows dates for amounts alleged owed pre-petition on June 05, 2025, dating back to 2023, (Exhibit 2 at pp. 7-12), and those same amounts and new charges post discharge (Exhibit 2 at pp. 7-12).

36. The Ledgers, Exhibit 2, reflect many mathematical impossibilities and human manipulation in many ways including but not limited to:

    a) Each ledger is divided into three parts:

A. the "Resident Ledger," which is Ms. Grays' payments or owed amounts for rent, late fees, and other charges;

B. The "Deposit Ledger," which is Ms. Grays' security deposit; and

C. A second "Resident Ledger," which shows the HCV payments and amounts owed for rent.

b) Ms. Grays sought correction of the ledger often, even requesting her ledger to show she paid her deposit. (Exhibit 2 at p.1). Exhibit 2 at p.1 is a screenshot of the Creditor's ledger system at that time, which shows Ms. Grays' deposit of $400 "held," *Id.*, meaning deposit paid, with a note from management at the bottom, admitting the ledgers needed to be "fix[ed,]" *Id.* Soon thereafter, Creditor starting using a new software, where the ledger shows 0.00 in the Credits column for the deposit. (Exhibit 2 at p. 4, p.13, p.14, and p.23).

c) The Deposit Ledger is also inaccurate in multiple months in that it shows in the Charges column 400.00, in the Credits column 0.00 and in the Balance column 0.00. If the deposit was not paid as in there is no Credit for the deposit, the Balance column and Balance amount should show 400, but it shows 0.00. (Exhibit 2 at p. 4, p.13, and p.14).

d) In January 2025, the Deposit Ledger is accurate again as it shows Ms. Grays paid the deposit. (Exhibit 2 at p.5).

e) The Deposit Ledger drastically changes in November 2025, to Creditor's benefit. Consistent with the previous months' Deposit Ledgers, the November Deposit Ledger shows in the Charges column 400.00, in the Credits column 0.00 but in lieu of the consistent column named "Balance," the Balance column has been changed to "Open" (Exhibit 2 at p. 23), but still shows the same amount of 0.00. The second change and difference are that in lieu of the "Balance" being listed under the columns, it has been changed to "Deposit Due: $400.00" *Id.*

f) Ms. Grays was told multiple times she paid her deposit, (Exhibit 2 at p.1 and p.5), but the ledgers inconsistently reflected the deposit as paid then owed and shows balances that are mathematically impossible.

g) Human manipulation of the Deposit Ledger is further evident in that after the November 2025 Deposit Ledger, in January 2026, the Deposit Ledger has changed the "Open" column back to "Balance." (Exhibit 2 at p.26). Even still the Balance column shows 0.00 without any Credits and with Charges of 400; mathematical impossibilities. *Id.*

h) These are just a few of the egregious errs in Ms. Grays ledgers. The ledgers cannot be trusted to show what Ms. Grays actually owed, for what purpose and what date(s). The ledgers do show Creditor's intent throughout Ms. Grays' entire residency through eviction and after eviction to collect debt that was discharged.

37. Creditor after the eviction, after direct knowledge of the discharge, sent Ms. Grays a "Final Bill" (Exhibit 4 pp.1-2), still including discharged debt, still seeking to coerce and harass Ms. Grays into payment in violation of the injunction. By obtaining an order of possession and thereby assessment of costs and fees based thereupon, against Ms. Grays post-bankruptcy, Creditor has willfully violated the discharge injunction.

38. As a direct result of the Creditor's and Tschetter's continuous, willful violations of the automatic stay and/or discharge injunction, Ms. Grays is suffering irreparable injury, including:

   a) **Loss of Housing Voucher:** The local Public Housing Authority has terminated Ms. Grays's HCV due to the eviction judgment forcing Ms. Grays out which made Ms. Grays noncompliant with the rules for HCV recipients. (Exhibit 5 – DHA Emails pp.1-5). Ms. Grays is homeless.

   b) **Out-of-Pocket Expenses:** Ms. Grays has incurred emergency moving, storage, legal expenses, increased living expenses, selling car below worth.

   c) **Severe Emotional Distress:** Ms. Grays faces has been homeless since April 20, 2026 and loss of her critical government safety-net benefit the HCV. Ms. Grays planned on receiving her HCV until her death. Ms. Grays is 43-year-old and planned on living to 93-years-old.

39. Tschetter is a Denver, Colorado law firm which purports to be "COLORADO'S #1 EVICTION LAW FIRM" and has been in business since "1994."

   a) Tsm.law




40. Since 1994 Tschetter has handled thousands if not more than 100,000 eviction cases for many landlords in Colorado, one of which is the Plaintiff.

41. Based on information and belief, Tschetter is an expert in landlord tenant disputes in the state of Colorado.
42. This long-term mutual financially beneficial relationship between Tschetter as Plaintiff's law firm has a duty of care to its clients and their debtors. As debt collector, Tschetter used deceptive and unfair debt collecting practices that have caused and/or contributed to the failure of Plaintiff to bring good faith Forcible and Detainer cases against Ms. Grays through services paid to Tschetter by Plaintiff. Causing and contributing to Ms. Grays severe emotional distress for years.
43. Tschetter, through multiple registered Colorado attorneys working for Tschetter: Ms. Hannah Bevers #58653 and Mr. Victor L. Sulzer #24804 failed to conduct reasonable inquiry into the alleged debt Ms. Grays owed to Creditor.
44. Ms. Grays is disabled, suffers multiple physical and psychological disorders which has been extremely aggravated due to all the Demands, eviction attempts, eviction, harassment, embarrassment, homelessness, inability to pay bills. Creditor is directly aware of Ms. Grays' disabilities and her susceptibility of harm.

## V. CLAIMS FOR RELIEF

45. Ms. Grays incorporates by this reference the allegations contained in Paragraphs 1 through 44 above as though more fully set forth in these Claims for Relief.
46. "[E]ven if the case had been closed, a debtor is not required to open the underlying Chapter 7 case before bringing claims for violation of the automatic stay pursuant to 11 U.S.C. § 362(k)." *In re Coleman*, No. 25-17551, slip op. at 2–3 (Bankr. D. Colo. Mar. 18, 2026).
47. The Creditor's FED action seeks to impose personal liability for a debt that was discharged in bankruptcy. 11 U.S.C. § 524(a)(2) operates as a federal injunction against precisely that conduct. The requested bankruptcy-court relief is enforcement of the federal discharge injunction, and said enforcement is based on the magnitude of Creditor's willful noncompliance with statutes and this Court's orders, but also the torture Ms. Grays has had to endure as a result.
48. Punitive damages are appropriate as the Creditor "acted with actual knowledge that he was violating a federally protected right or with reckless disregard of whether he was doing so." *In re Johnson*, 501 F.3d 1163, 1169 (10th Cir. 2007) quoting *Diviney v. NationsBank of Tex., N.A. (In re Diviney)*, 225 B.R. 762, 776 (10th Cir. BAP 1998). "[P]unitives are aimed not at compensation but principally at retribution and deterring harmful conduct." *Exxon Shipping Co. v Baker*, 554 U.S. 471, 492, 128 S. Ct. 2605, 171 L.Ed.2d 570 (2008); *see also In re Ocasio*, 272 B.R. 815, 825 (1st Cir. BAP 2002) ("[t]he primary purpose of punitive damages awarded for a willful violation of the automatic stay is to cause a change in the creditor's behavior"); *In re Shade*, 261 B.R. 213, 216 (Bankr. C.D. Ill. 2001) (same); *In re Riddick*, 231 B.R. 265, 269 (Bankr. N.D. Ohio 1999) (same).
49. Willfulness is to be "liberally construed to bolster the protections of the automatic stay," *In re Sharon*, 234 B.R. at 688. Creditor is a sophisticated landlord and property owner with thousands of apartment units it rents, in multiple U.S. states

to thousands of people; even having properties meant to house low income and disabled persons. One such property where Ms. Grays resided. Creditor is also represented by counsel that is quite familiar with eviction laws, HCVs and bankruptcy procedure in Colorado. Creditor is being represented by a law firm which states it is “Colorado’s #1 Eviction Law Firm.”

50. All of the Demands are demands as defined in 11 USC § 524(g)(5).

**A. Willful Violation of the Automatic Stay (11 U.S.C. § 362) - Creditor**

51. The automatic stay is a bedrock of principles of bankruptcy law, designed to give Ms. Grays immediate financial breathing room. It prohibits the commencement of an eviction action for pre-petition rent, late fees, utility fees, attorney fees, and deposit.
52. Creditor knew of the automatic Stay in July 2025.
53. The Demand for payment posted September 10, 2025, (Exhibit 1 at pp. 7-11), on Ms. Grays’ door for all to see and was seen by any person walking by, did not satisfy any requirements of the safe harbor provided by L.B.R. 4001-6.
54. The Demand for payment posted September 10, 2025, (Exhibit 1 at pp. 7-11), on Ms. Grays’ door for all to see and was seen by any person walking by, violated the Stay under § 362(a)(6) based on its content, context, purpose, and objective effect.
55. The Demand for payment posted October 30, 2025, (Exhibit 1 at pp. 12-14), on Ms. Grays’ door for all to see and was seen by any person walking by, did not satisfy any requirements of the safe harbor provided by L.B.R. 4001-6.
56. The Demand for payment posted October 30, 2025, (Exhibit 1 at pp. 12-14), on Ms. Grays’ door for all to see and was seen by any person walking by, violated the Stay under § 362(a)(6) based on its content, context, purpose, and objective effect.
57. While the October 30, 2025, Demand for payment was posted the same day as the discharge being sent, the willful intent is clear in that Creditor issued the Demand on October 29, 2025, while the stay was in effect and served the Demand while Creditor knew the stay was in effect.
58. The September 10, 2025, and October 30, 2025, Demands violated the stay as they:
    a) stated an amount due;
    b) provided payment instructions;
    c) imposed a payment deadline;
    d) threatened a personal collection remedy of possession of Ms. Grays’ residence through ending Ms. Grays’ tenancy; and
    e) based on said actions seeking attorney’s fees and costs.
59. The Demands were threatening and coercive pressure to collect a prepetition debt.
60. Had Ms. Grays paid the amount stated in the Demands, Ms. Grays would have avoided court, avoided a seven-hour trial, avoided a writ of possession issued against her, avoided attorney’s fees and costs taxed, avoided becoming homeless, avoided losing her HCV, avoided severe emotional distress, avoided embarrassment, avoided moving costs, avoided storage costs, avoided eviction.

61. Under 11 U.S.C. § 362(k)(1), an individual injured by any willful violation of the stay *shall* recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.
62. A violation is "willful" if the creditor knew of the stay and intended the actions which violated it. The Creditor knew of the bankruptcy filing as the same address used to mail the Notice was also the same address used to mail the discharge, neither were returned, and Creditor's manager Tac Bonney affirmed Creditor's receipt. Yet Creditor intentionally posted multiple Demands, constituting a clear, willful violation of § 362(a)(1),(6).
63. "Under the *fair ground* of *doubt* standard, civil contempt [is]...appropriate when the *creditor* violates a[n automatic stay] order based on an objectively unreasonable understanding." *Taggart v. Lorenzen*, 139 S. Ct. 1803 (2019).
64. Clerical error is insufficient to render a stay violation not "willful." *See, e.g., Fleet Mortg. Grp., Inc.*, 196 F.3d at 268-69 (an innocent mistake can result in a willful stay violation); *In re Rijos*, 263 B.R. 382, 392 (1st Cir. BAP 2001) ("[T]he 'computer did it' defense is not viable"); *In re Nixon*, 419 B.R. 281, 289 (Bankr. E.D. Pa. 2009) ("most courts that have considered the issue have held that a violation of the automatic stay occurring from intentional creditor action following human clerical or computer error is nonetheless a "willful" violation remediable under § 362(k)."); *In re Price*, 42 F.3d 1068, 107071 (7th Cir. 1994) (a computer generated notice that "could have been suspended with human intervention" was willful); *Wingard*, 382 B.R. at 902 ("creditors have a clear obligation to adjust their programming and procedures and their instructions to employees to handle complex matters correctly"); *In re Orman*, 2006 WL 4470839, at *3 (Bankr. E.D. Okla.) (collection letters sent by mistake were willful stay violations); *In re Kinsey*, 349 B.R. 48, 51–52 (Bankr. D. Idaho 2006) (having procedures in place does not inoculate a creditor from sanctions if the procedures fail); *In re Lofton*, 385 B.R. 133, 138–41 (Bankr. E.D.N.C. 2008) (clerical error resulted in willful stay violation); *In re Stamps*, 2000 WL 1706897, at *5 (Bankr. N.D. Ill.) (willfulness found based on a clerical error); *In re Hill*, 222 B.R. 119, 123–24 (Bankr. N.D. Ohio 1998) (finding willfulness in case involving clerical error in violating the discharge injunction of § 524(a)(2)); *In re Brown*, 1995 WL 776920, at *2 (Bankr. S.D.) (error in coding computer could result in a willful stay violation). Creditor would have persisted even with knowledge of the stay protecting Ms. Grays, as it did when it had direct knowledge provided under oath of the discharge at the eviction trial and still proceeded. A true showcase of bad-faith.
65. "Even an innocent stay violation (one committed without knowledge of the stay) becomes willful, if the creditor fails to remedy the violation after receiving notice of the stay." *Sutton v. Nordike*, Adv. Pro. No. 23-01014-JGR, ¶ __ (Bankr. D. Colo. May 16, 2025) (Rosania, J.). "When taken together, *Fulton, Margavitch,* and *Iskric* stand for the proposition that a willful stay violation occurs when a party takes affirmative action to continue a case or fails to act to preserve the status quo resulting in adverse consequences to the debtor. Neither occurred in the instant case." *Id.*
66. "[A] technical violation can become willful when a creditor refuses to remedy the violation after receiving notice of the stay." *Kline v. Deutsche Bank Nat'l Trust Co.*

(In re Kline), 472 B.R. 98, 102 (B.A.P. 10th Cir. 2012). The absence of a specific intent to violate the stay does not preclude willfulness under § 362(k). *In re Johnson*, 501 F.3d 1163, 1172 (10th Cir. 2007).

**B. Willful Violation of the Discharge Injunction (11 U.S.C. § 524) - Creditor**

67. Under the standard in *Taggart v. Lorenzen*, 139 S. Ct. 1795 (2019), a creditor may be held in civil contempt for violating the discharge injunction if there is "no fair ground of doubt" as to whether the order barred the creditor's conduct. "In other words, civil contempt may be appropriate if there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful." *Id. Taggart* at 1799.
68. The *fair ground* of *doubt* "standard would permit a finding of civil contempt if the *creditor* was aware of the discharge order and intended the actions that violated the order." *Id. Taggart* at 1803. Based on the factually sufficient record herein, "the effect of the state litigation[, the eviction,] was nevertheless to harass and coerce [Ms. Grays] into paying discharged debts." *Paul v. Iglehart*, 505 F.3d 1383, 1385 (10th Cir. 2007).
69. Creditor knew of the discharge and informed its agent Tac Bonney who served Ms. Grays the Demand outlined in paragraph 23(g)(A)-(B), *supra*. Creditor also knew at the eviction trial and still proceeded. (Exhibit 6 at p.2 ln 8-25, p.3 ln 1-15, p.4 ln 16-25, p.5 ln 1-14).
70. The Demand for payment posted October 30, 2025, (Exhibit 1 at pp. 12-14), on Ms. Grays' door for all to see and was seen by any person walking by, violated the Stay under § 524(a)(1)-(2) based on its content, context, purpose, and objective effect.
71. While the October 30, 2025, Demand for payment was posted the same day as the discharge, the willful intent is clear in that Creditor persisted with two subsequent Demands for payment.
72. The Demand for payment posted November 11, 2025, (Exhibit 1 at pp. 15-17), on Ms. Grays' door for all to see and was seen by any person walking by, violated the Stay under § 524(a)(1)-(2) based on its content, context, purpose, and objective effect.
73. The Demand for payment posted January 10, 2026, (Exhibit 1 at pp. 18-20), on Ms. Grays' door for all to see and was seen by any person walking by, violated the Stay under § 524(a)(1)-(2) based on its content, context, purpose, and objective effect.
74. The January 10, 2026, November 11, 2025, and October 30, 2025 Demands violated the injunction as they:
    a) asserted Ms. Grays remained personally liable;
    b) threatened a deficiency and other personal collection FED action; of an FED imposed a payment deadline; and
    c) offered to stop the collection efforts through a FED action if Ms. Grays paid the discharged obligation.
75. The January 10, 2026, November 11, 2025, and October 30, 2025 Demands were threatening and coercive pressure to collect a prepetition debt.

76. Had Ms. Grays paid the amount stated in the Demands, which included prepetition debt, Ms. Grays would have avoided court, avoided a seven-hour trial, avoided a writ of possession issued against her, avoided attorney's fees and costs taxed, avoided becoming homeless, avoided losing her HCV, avoided severe emotional distress, avoided embarrassment, avoided moving costs, avoided storage costs, avoided eviction.
77. By continuing post multiple Demands and to prosecute an eviction to judgment after receiving explicit notice of the discharge order understanding the Demand upon which the eviction was based included pre-petition debt that was discharged, the Creditor acted maliciously, willfully, and intently without care or concern for fairness and the law substantiating punitive damages.
78. Creditor's conduct is further willful and reckless in violation of the discharge injunction because it did not seek to vacate the eviction and avers to the state court that the eviction was not to seek actual payment of monies alleged owed through the Demands, the Complaint, and the almost seven-hour possession trial. Resulting in the status quo of a fresh start for Ms. Grays to be upset. *In re Iskric*, 496 B.R. 355 (Bankr. M.D. Pa. 2013).
79. Because the FED case was filed and completed in violation of the of the discharge, the resulting eviction judgment is completely void *ab initio* pursuant to 11 U.S. Code § 524(a)(1)-(2).

**<u>C. Intentional Infliction of Emotional Distress – Creditor & Tschetter</u>**

80. The Creditor engaged in extreme and outrageous conduct of not complying with this Court's Stay Order or the Discharge Injunction through evicting Ms. Grays based on prepetition debt.
81. The Creditor extreme and outrageous conduct was reckless and/or with the intent of causing Ms. Grays severe emotional distress of being forced out of her residence based on debt that was discharged as evident in the possession trial transcript.
82. The Creditor's conduct caused Ms. Grays severe emotional distress of enduring hearings and trials, having her record tarnish with an eviction, having to pack and come up with money to move, having to pay for services and goods she could not afford, having to appeal the possession judgment, having to seek contempt against Creditor, having to be homeless and find shelter, shame, humiliation, embarrassment, anger, fear of her own safety and for the consequential damages caused by that fright, anguish, sleeplessness, sadness, anxiety, depression, nervous shock, homelessness, loss of HCV, and worry that would not have been had Creditor not sought the recovery of discharged debt.
83. As the landlord of the property where Ms. Grays resided for over 3 years and was subsequently evicted from, a property serving the disabled and poor, Creditor's extreme and outrageous character of conduct arises from their employee's knowledge that Ms. Grays is peculiarly susceptible to emotional distress because of some physical and/or mental conditions as mentioned herein

through multiple reasonable accommodation requests, approvals and others ignored.

84. Said emotional distress has been occurring since the automatic stay and through the date of the filing of this Motion and will remain until the Court grants the relief requested and such relief is satisfied.
85. All of which is more than a person of the same or similar susceptibility as Ms. Grays would reasonably be expected to endure under the same or similar circumstances, as the status quo for discharge injunctions and stays is to observe and obey them.

**D. Defamation – Creditor & Tschetter**

86. On or about April 14, 2026, Creditor published false statements to Denver district court clerk and records, and all national judgment databases including but not limited to LexisNexis, that Ms. Grays had to be forcibly removed from her residence for nonpayment of rent that was discharged through bankruptcy.
87. As a direct and proximate cause of Creditor's known false statements Ms. Grays has been in fear for her life through Sheriffs and police coming to her door at any time, her safety, well being, damage to her reputation as a renter, and humiliation.
88. As a direct and proximate cause of Creditor's known false statements published as a matter of public record, Ms. Grays has incurred actual damages including but not limited to, loss of life enjoyment, loss of wages, and incurred costs and fees, in addition to *inter alia* severe emotional distress, physical injuries, mental anguish including humiliation and fear.

**E. Fair Debt Collection Practices Act ("FDCPA") - Tschetter**

89. Tschetter employed aggressive collection efforts leveraging the threat of eviction to induce Ms. Grays into payment of discharged debt with the filing of a FED Complaint seeking $2,062.00 in case 26C53872 on or about February 11, 2026. (Exhibit 1 at p.18).
90. Tschetter is a debt collector for Laradon as defined in 15 U.S.C. § 1692f(6) and 15 U.S.C. § 1692a(6).
91. Tschetter's actions in 26C53872/26CV129 were unfair and/or unconscionable means of taking Ms. Grays' residence.
92. Ms. Grays is a person as defined in FDCPA.
93. Tschetter is well aware of its obligations under the FDCPA as indicated in a recent landmark case in U.S. District of Colorado case 1:22-cv-00271-CNS-NRN – a class action suit – which Tschetter settled after over 2 years of litigation. FDCPA applies to attorneys if they are lawyers who "regularly engage in consumer-debt-collection activity," on behalf of a creditor client, "even when that activity consists of litigation." Heintz v. Jenkins, 514 U.S. 299 (1995).
94. Tschetter by and the multiple dismissed evictions and the retaliatory eviction consolidated in 26CV129, Tschetter, "engage[d] in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt," in violation of 15 U.S.C. § 1692d.

95. Tschetter's in 26C53872/26CV129 intentionally and/or carelessly falsely represented to Ms. And the lower court using deceptive and misleading allegations regarding the actual balance Ms. Grays owed and distorted the legal right to evict based upon a Demand that contained discharged debt in violation of 15 U.S.C § 1692e(2)(A).
96. Tschetter's in 26C53872/26CV129 communicated with multiple third parties at the courthouse, process server, and the public with the eviction placed upon Ms. Grays' record false information about the debt owed in violation of 15 U.S.C. § 1692c(b).
97. Tschetter's failure to conduct due diligence into the alleged debt Ms. Grays owed is a violation of 15 U.S.C. § 1692g(a)(1).
98. All of the conduct of Tschetter alleged herein is unfair and/or unconscionable collection means by through frivolous eviction cases attempting to collect a debt that includes an amount that is not authorized by any agreement in violation of 15 U.S.C § 1692f(1).
99. Tschetter's debt collection practices caused Ms. Grays *inter alia*, actual loss, severe emotional distress
100. Ms. Grays is seeking the greater of any available relief under 15 U.S.C. § 1692k(a).

# VI. PRAYER FOR RELIEF

**WHEREFORE**, Creditor's procedures for dealing with Ms. Grays' bankruptcy filing were willfully and recklessly unlawful with an especially egregious function in that Creditor through said conduct has stripped Ms. Grays of her basic human need of shelter. Based in the foregoing, Ms. Grays has established a pattern of Creditor's willful disregard for multiple laws and this Court's orders. It should have been a simple matter to discontinue billing for prepetition amounts due; zero out the ledger; allocate fairly between any pre- and post-petition rent, late fees, or utilities; and cease the eviction of Ms. Grays. Creditor fell well short in each of these areas, resulting in willful stay and discharge violations. By and through the foregoing, as Ms. Grays remains homeless, Ms. Grays respectfully requests that this Court expedite this matter and enter an Emergency Order:

A. Finding the Creditor in willful violation of the automatic stay under 11 U.S.C. § 362(k);

B. Finding the Creditor in civil contempt under 11 U.S.C. § 105(a) for willfully violating the discharge injunction;

C. Pursuant to 11 U.S.C. § 105(a), order the possession judgment obtained in Case No. 26CV129 void *ab initio* in violation of 11 U.S.C. § 524(a)(1)-(2);

D. Order Creditor to take necessary steps to get the eviction judgment vacated and sealed within 24 hours of this Order by filing an "Unopposed Emergency Motion to Vacate or Set Aside Possession Judgment" the complies with filing requirements and is strictly limited to the include the following:

    i. A certified copy of the order of this Court attached as an exhibit;

ii. A brief statement: “the April 14, 2026 judgment for possession is void as it sought payment for debt that was discharged and relief is being sought pursuant to the Court’s order; (reference the attached exhibit)”

iii. Requesting the district court release the appeal bond to Ms. Grays, vacate the writ and remove it from Ms. Grays’ record, vacate the awarding of attorney’s fees and costs.

E. Order Creditor to take necessary steps to appeal through all appellate courts, up to and including the U.S. Supreme Court, if there is a denial of the possession judgement being vacated/set off/over-turned;

F. Order Creditor to pay $1000.00 per day until all of the following are met:

i. The possession judgment is voided/vacated/set aside;

ii. All monies as a result of the possession judgment: appeal bond, possession transcript, costs, and damages as outlined herein are returned and/or paid to Ms. Grays with interest;

iii. The possession judgment sealed and removed from Ms. Grays’ record with LexisNexis, TransUnion SmartMove, Zillow Rental Manager, Checkr, TurboTenant, Experian, RentGrow, GoodHire, RealPage, and any other database or system containing the possession judgment;

G. Order Creditor to notify Denver Housing Authority, copying and/or including Ms. Grays on all communications, that Ms. Grays was evicted in err;

H. Order Creditor to determine the correct amount of rent owed from July 16, 2025 through April 20, 2026, and the correct monthly rent amount Ms. Grays was to pay herself and which amount DHA was to pay;

I. Sanction Creditor by releasing Ms. Grays from any and all debt she incurred with Creditor post-petition;

J. Awarding Ms. Grays actual damages as of the filing of this Motion;

i. Loss of HCV: Current HCV value $1,1778.00 adjusted annually for inflation for 50 years:

| Annual inflation | Monthly rent in May 2026 | Monthly rent in May 2076 | 50-year Total |
|---:|---:|---:|---:|
| 3.0% | $1,778 | $7,795 | $2,406,634 |
| 4.2% | $1,778 | $13,910 | $3,466,199 |
| 5.0% | $1,778 | $20,389 | $4,466,649 |

(Each year's rent was calculated by compounding the prior year's rent. Inflation based on https://www.bls.gov/news.release/cpi.htm)(09/11/2026)

ii. Moving costs: $3,000;

iii. storage fees: $1,1000;

iv. Car sold under value: $2,500;

v. Loans: $660;

vi. Appeal bond and Interest for voided judgment: $1,828.00 (Principal) + $55.69 (Interest);

vii. Transcript for appeal of voided judgment: $731.25;

K. Awarding Ms. Grays compensatory damages for severe emotional distress as outlined herein including physical anguish, depression, anxiety, PTSD, difficulty sleeping, loss of enjoyment of life, fear, humiliation, defamation, outrageous conduct, retaliation: $2,000,000;

L. Awarding Ms. Grays punitive and/or compensatory damages of $2,000,000:

M. Awarding Ms. Grays reasonable attorneys' fees, expenses, and costs incurred in bringing this motion;

N. Declare the possession judgment void pursuant to 11 U.S. Code § 524(a)(1)-(2);

O. Stay of the possession judgment through the completion of this Complaint and motion; and

P. Granting such other and further relief as this Court deems just and proper.

Dated: October 16, 2026

Respectfully Submitted,

Tiffany Grays
PO Box 472322
Aurora, CO 80047
(720) 571-5811
Legalgrays@gmail.com